UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No: 8:22-cr-369-KKM-AAS

EMMANUEL AYALA,

   Defendant.
_____

# ORDER

To assist in the fully informed resolution of Mr. Ayala's motion to dismiss with respect to count one of the indictment, the government is ordered to provide additional briefing on the historical evidence of regulations banning firearms in post offices and the meaning of "other lawful purposes" in 18 U.S.C. § 930(d)(3). Ayala may respond.

Ayala brings an as-applied constitutional challenge to his indictment under § 930, arguing that there is no historical evidence justifying bans on firearms in post offices. That is the right inquiry for purposes of the Second Amendment: "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2127 (2022). If a regulation exceeds that historical tradition, the Second Amendment's "unqualified command" protects an individual's right. *Id.* at 2126.

It is true that neither *District of Columbia v. Heller*, 554 U.S. 570 (2008), nor *McDonald v. City of Chicago*, 561 U.S. 742 (2010), "cast doubt" on "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626; *McDonald* 561 U.S. at 786. But the Supreme Court in *Bruen*—while noting it had "no occasion to comprehensively define sensitive places"—clarified the sensitive places exception and instructed courts to use that test to evaluate future constitutional challenges:

> Although the historical record yields relatively few 18th- and 19th-century "sensitive places" where weapons were altogether prohibited—*e.g.*, legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions. *See* D. Kopel & J. Greenlee, The "Sensitive Places" Doctrine, 13 Charleston L. Rev. 205, 229–236, 244–247 (2018); *see also* Brief for Independent Institute as *Amicus Curiae* 11–17. We therefore can assume it settled that these locations were "sensitive places" where arms carrying could be prohibited consistent with the Second Amendment. And courts can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible.

142 S. Ct. at 2133.

Other lower courts have taken the cue from *Bruen* to apply the proper historical test to determine whether other "longstanding prohibitions" and "sensitive places" bans, *Heller*,

2

554 U.S. at 626, are consistent with the Second Amendment. *See e.g.*, *Siegel v. Platkin*, No. 22-7464, 2023 WL 1103676 (D.N.J. Jan. 30, 2023) (granting temporary restraining order in part on challenge to New Jersey law banning guns in several places including public libraries, museums, parks and restaurants); *United States v. Power*, No. 20-po-331, 2023 WL 131050 (D. Md. Jan. 9, 2023) (denying motion to dismiss indictment for bringing gun into National Institute of Health campus after government presented evidence that it is analogous to sensitive places recognized at the Founding); *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) (concluding 18 U.S.C. § 922(g)(1) is constitutional only after a historical review), *vacated en banc* 56 F.4th 992 (3d Cir. 2023).

I must do likewise. The government's response to Ayala's motion to dismiss on this ground is unhelpful in this task. It consists of two paragraphs summed up as follows: "A government building has been deemed a sensitive place that can ban the carrying of firearms while not violating an individual's Second Amendment rights and is consistent with the Nation's historical tradition of firearm regulation." Resp. (Doc. 25) at 4. That assertion simplifies (and likely overstates) the sensitive places exception as definitely carving out from Second Amendment protection all government buildings. But *Bruen* requires a more searching analysis into the historical record to determine whether § 930 as applied to Ayala defeats the "presumpt[ion]" that the Constitution protects his conduct. *See* 142 S. Ct. at 2127. The government has the burden to "affirmatively prove" that its firearms

3

regulation in non-public areas of post offices is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

Because the government squarely fails to do so in its initial response, the government must submit supplemental briefing that examines the historical evidence of regulation of firearms at post offices, with a particular view to the time of the Founding. *Bruen*, 142 S. Ct. at 2135–38 (explaining the inherent limitations of evidence that either long predates or postdates ratification of the Second Amendment).[1] Given that the Constitution gave Congress the power "[t]o establish Post Offices" even before the States ratified the Second Amendment, *see* Art. I, § 8, Const., the existence—or lack thereof—of firearms regulations governing post offices is highly informative.

Ayala's situation presents another potential wrinkle: what kinds of firearms regulations at the Founding applied to postmasters (or other postal office employees)? The government's obligation here thus requires a survey of both kinds of historical evidence of firearms regulations, at post offices and of their workers.

---

[1] The Eleventh Circuit recently held that Reconstruction Era historical sources "are more probative of the Second Amendment's scope than" Founding Era sources when determining the scope of the Second Amendment right incorporated against the States. *Nat'l Rifle Ass'n v. Bondi*, __ F.4th __, 2023 WL 2416683, at *3 (11th Cir. 2023). This is because "the Fourteenth Amendment is what *caused* the Second Amendment to apply to the States," so "the understanding that prevailed when the States adopted the Fourteenth Amendment . . . is what matters." *Id.* But here, Ayala challenges a federal statute, so the scope of the Second Amendment when it was adopted is what matters. *Id.* (quoting *Bruen*, 142 S. Ct. at 2136) ("Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.").

Ayala also attacks § 930 as unconstitutionally vague as applied to him. Before analyzing the merits of any Due Process Clause concern, I must first attempt to determine the scope of § 930(d)(3) to know whether Ayala falls within the exception that permits possessing a firearm in a federal facility. That subsection excludes from prosecution "the lawful carrying of firearms or other dangerous weapons in a Federal facility incident to hunting *or other lawful purposes.*" (emphasis added). If Ayala's conduct falls within the plain meaning of that provision, he is entitled to dismissal of count one without resort to any vagueness challenge. Because Ayala had a concealed weapons permit and a class "G" security license under Florida law (which the government does not dispute), the key inquiry is whether he carried the firearm for another "lawful purpose" while at work at the post office. But neither party attempts to define—using ordinary tools of statutory construction, including the relevance of any corollary federal regulations—what "other lawful purposes" means in context of § 930(d). The government asserts that "there is no evidence" that "Ayala carried his concealed firearm during his employment with USPS on multiple dates incident to hunting or other lawful purposes." Once again, that is a conclusion without explanation of the legal rule applied.

Accordingly, the government must submit supplemental briefing not to exceed 30 pages no later than **April 14, 2023**. Ayala may respond no later than **May 5, 2023**, in

5

briefing not to exceed 20 pages. The status conference remains scheduled for **March 14, 2023**.

**ORDERED** in Tampa, Florida, on March 13, 2023.

Kathryn Kimball Mizelle
United States District Judge